EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff-Appellant,

v.

CENTRAL MOTOR LINES, INC., et al., Defendants-Appellees.

No. 75–1654.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 4, 1975.

Decided March 19, 1976.

---

Ramon V. Gomez, Washington, D. C. (Abner W. Sibal, Gen. Counsel, Joseph T. Eddins, Associate Gen. Counsel, Beatrice Rosenberg, Charles L. Reischel, Lutz Alexander Prager, Washington, D. C., on brief), for appellant.

Jonathan G. Axelrod, Hugh J. Beins, W. P. Sandridge, Sr., Winston Salem, N. C. (Marvin Gittler, Asher, Greenfield, Goodstein, Pavalon & Segall, Ltd., Chicago, Ill., on brief), for appellees.

Before RUSSELL and WIDENER, Circuit Judges, and THOMSEN,* Senior District Judge.

THOMSEN, Senior District Judge.

EEOC appeals from a judgment order of the district court entered on March 20, 1975, terminating a civil action and removing it from the active docket of the court, but providing that otherwise the decree entered therein on December 23, 1971, shall remain in full force and effect. Appellant really seeks review of an order entered June 25, 1974, which interpreted and clarified the original decree of December 23, 1971.

Central Motor Lines (the company) is engaged in the business of local, intrastate and interstate transportation of goods, with terminals in Charlotte and Greensboro, North Carolina. The other defendants are local unions with which the company has agreements.

In August 1969 the United States, through the Attorney General, filed this action pursuant to its "pattern and practice" authority under § 707 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–6, to correct racially discriminatory practices. After trial, the district court found that defendants discriminatorily restricted the company's driving positions to white employees, and that the provisions of the collective bargaining agreements, combined with the company's hiring practices, had the effect of perpetuating past discrimination. The court ruled that blacks assigned by the company to lower paying positions "shall be entitled to transfer to future vacancies in over-the-road driving positions on the basis of their competency and terminal or company seniority". *United States v. Central Motor Lines Inc.,* 338 F.Supp 532, 560 (W.D. N.C. 1971).

The decree provided that notice be given to all affected class members informing them of their right to transfer to over-the-road driving positions with the company. Class members who expressed such an interest within 30 days were to be contacted by the company when vacancies occurred in over-the-road positions. The most senior class member on the basis of terminal seniority was to be offered the position, if he

---

* Sitting by designation.

were able to successfully pass the company's performance test. The court did not define what would constitute a "vacancy" within the provisions of the decree. In order to insure that "equal employment opportunities are provided * * * and that all effects of past discrimination based on race or color are eliminated", the court retained jurisdiction to issue further orders in the case. The decree further provided: "The defendants or any of them, may move this Court for modification or dissolution of this Decree upon proper showing". 338 F.Supp. at 566.

On August 12, 1973, the company filed a motion for modification of the decree and for advice and instructions from the court, based upon a new collective bargaining agreement between the trucking industry and defendant locals, the effect of which was to change significantly the company's over-the-road operations on the "East Board",[1] and would, for the first time in the company's history, result in the lay-off of 23 road drivers in Charlotte and 12 in Greensboro. The company sought advice from the district court as to whether, in the event of a vacancy in Greensboro, the driving job was to be offered to the most senior employee on lay-off status or to the most senior affected class member in Greensboro. The court declined to rule on that question at that time because the issue was not presented by any existing facts but would arise only in the future.

On April 17, 1974, the government moved the court to clarify the decree with respect to that question and to rule that only in instances where a road driver had been on lay-off status for ninety days or less, could he be recalled to his job in preference to class members with greater terminal senior-

ity who had never been over-the-road drivers. In its response to the motion, the company requested the court to reactivate the company's prior motion because three over-the-road vacancies had arisen in Greensboro and the company had been compelled by its contract with the defendant locals to fill such positions with drivers who had been on lay-off status for 19 months. On June 25, 1974, the court ruled that the decree did not require the company to offer such positions to the affected class members when there were drivers on lay-off status, a status which was retained by laid-off drivers for a period of three years under the collective bargaining agreement.

On July 1, 1974, the government moved the court for supplemental relief consisting of a modification of the decree to allow class members then working in Greensboro to compete on the basis of terminal seniority with over-the-road drivers on lay-off status for vacant driving positions in Greensboro. On October 11, 1974, the court denied supplemental relief on the basis "that all seven of those [affected class] members have heretofore been offered over-the-road jobs which they have declined". EEOC, which had been substituted for the United States as plaintiff on October 10, took no appeal from that order. Rather, on October 23, EEOC filed a motion for reconsideration of the October 11 order on the ground that no adequate factual record had been developed and the findings of the court were not accurate.

On March 20, 1975, the district court entered a judgment order which terminated and removed the case from the active docket of the court, but provided "that otherwise, the said decree [of December 23, 1971] shall remain in full force and effect".[2] On

---

1. Such over-the-road runs, the majority of which had been two-man sleeper operations, were to be made into single driver operations.

2. The judgment order of March 20, 1975, read as follows:

"This Court entered a decree herein dated December 23, 1971. Paragraph 35 of that decree provided that the Court retain jurisdiction

for the purpose of issuing any and all additional orders that might become necessary for the purpose of insuring that equal employment opportunities are provided for all employees and prospective employees at Central's Greensboro and Charlotte facilities without regard to race or color and that all other effects of past discrimination based on race or color are eliminated. The said paragraph provided that the de-

May 6, 1975, EEOC appealed from the judgment order of March 20, 1975, on the ground that "[t]his Judgment denied the relief sought by Plaintiff in its Motion for Supplemental Relief, filed on July 1, 1974, and its Motion for Reconsideration of Court's Order Denying Plaintiff's Motion for Supplemental Relief, filed October 23, 1974". The company and the unions take the position that the appeal is really from the order of June 25, 1974, and is therefore untimely. They ask us to dismiss that appeal as untimely, or to affirm. We dismiss the appeal for the following reasons.

■ Under Rule 4(a), F.R.App.P., plaintiff had sixty days from the date of the entry of the order of June 25, 1974, to appeal from that order, which interpreted and clarified the decree of December 23, 1971, although not in the way plaintiff had sought. Plaintiff did not enter such an appeal, but filed a motion for supplemental relief on July 1, 1974, which in effect asked the court to do what it had refused to do by its order of June 25. The July 1 motion was denied on October 11. Whether the July 1 motion be considered a motion under Rule 52(b) or a motion under Rule 59, F.R. Civ.P., it extended the time for filing a notice of appeal from the order of June 25 until sixty days after October 11. Plaintiff, however, did not file a notice of appeal from the June 25 order within that time; rather, on October 21 plaintiff served and on October 23 filed a motion for reconsideration of the order of October 11. Such a second motion did not further extend the time for appeal from the order of June 25, 1974. 9 Moore's Federal Practice, 1975 ed., ¶ 204.12[1], pp. 951–952 and notes 7 and 8

thereto, which cites a number of cases supporting this conclusion.

■ In the oral argument, as well as in the unions' response to plaintiff's motion for reconsideration, it was stated that the situation has changed, because the ICC has granted temporary authority for Akers Motor Lines to take over the operations of the company and on October 18, 1974, Akers announced that it intended to close the company's road operation in Greensboro and move that work to Charlotte. We were also told in the oral argument that another company, Transcom Lines, wishes to take over the East Board portion of the company's operation. These changes in the situation of the parties should be the subject of a new proceeding, which may be based, to the extent appropriate, upon the decree of December 23, 1971, which the judgment order of March 20, 1975, recognized as being still in effect, except as otherwise provided.

The appeal from the judgment order of March 20, 1975, is hereby dismissed, without prejudice to further appropriate proceedings by EEOC or others, as to which we express no opinion.

---

fendants or any of them could move the Court for modification or dissolution of this decree upon proper showing.

"Since the entry of this decree, the plaintiff and some of the defendants have applied to the Court from time to time for advice and instructions, looking to compliance with the decree and for modification of the decree. All such applications have been dealt with by the Court and orders entered with respect thereto. The Court is of the opinion that there is no need for the Court further to retain jurisdiction of this cause—

"NOW, THEREFORE, upon the Court's own motion,

"IT IS ORDERED that this action be and the same is hereby terminated and that it be removed from the active docket of this Court but that otherwise, the said decree shall remain in full force and effect. This judgment is without prejudice to any orders made by the Court between the entry of the decree and this date. The Court makes no change in the order with respect to costs contained in paragraph 36 of the decree."